*W.F. Gebhardt & Co., Inc. v. American European Insurance Co.*, No. 93, September Term, 2020. Opinion by Fader, C.J.

**INSURANCE POLICES — RULES OF CONSTRUCTION — CONTRACT PRINCIPLES**

Insurance policies are construed according to contract principles, construing the policy as a whole according to the objective theory of contract interpretation.

**INSURANCE POLICES — RULES OF CONSTRUCTION — AMBIGUITY — EXTRINSIC EVIDENCE**

A court may consider extrinsic evidence of the parties' intent if it determines contractual language to be ambiguous. A term in an insurance policy is ambiguous only if a reasonably prudent person would find it susceptible to more than one meaning when viewed in context of the text of the entire policy, the policy's character and purpose, and the facts and circumstances of the parties at the time of execution.

**INSURANCE POLICES — RULES OF CONSTRUCTION — USE OF DICTIONARY DEFINITIONS**

Courts traditionally look to dictionary definitions to supply the ordinary and accepted meanings of terms in an insurance policy. Dictionaries are thus useful in determining whether terms in an insurance policy are ambiguous. Dictionaries are not extrinsic evidence.

**INSURANCE POLICES — RULES OF CONSTRUCTION — USE OF DICTIONARY DEFINITIONS — SPECIFIC TERMS**

If the definition of a word incorporates multiple concepts, that can be a feature of its meaning rather than an inherent ambiguity.

**INSURANCE POLICES — PARTICULAR WORDS OR TERMS**

A fire escape that is physically attached to a building, including its attached ladder that descends onto a neighboring property a few feet away from the premises boundary, was "at the premises" for purposes of a commercial property insurance policy.

Circuit Court for Baltimore City
Case No. 24-C-19-000218

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 93

September Term, 2020

_____

W. F. GEBHARDT & CO., INC.

v.

AMERICAN EUROPEAN INSURANCE CO.
_____

Fader, C.J.,
Kehoe,
Friedman,

JJ.
_____

Opinion by Fader, C.J.
_____

Filed: May 26, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Is a ladder that is part of a fire escape that is physically attached to a multi-family apartment building "at the premises" if the ladder descends to the ground at a spot in a neighbor's backyard within a few feet of the covered premises? In this insurance coverage case, the Circuit Court for Baltimore City concluded that the answer is no, and, therefore, that American European Insurance Company ("AEI"), the appellee, was not required to provide coverage to W.F. Gebhardt & Co., Inc. ("Gebhardt"), the appellant, for damages arising from the destruction of the ladder. Based on the plain language of the insurance contract, we disagree. Accordingly, we will reverse the circuit court's award of summary judgment in favor of AEI and remand for further proceedings consistent with this opinion.

## BACKGROUND

### *Destruction of the Fire Escape and the Claims Against the Neighbors*

Gebhardt is the owner of a four-unit apartment building located at 2709 N. Calvert Street in Baltimore (the "Premises").[1] Upon acquiring the Premises in 1966, Gebhardt converted it from a single- to a multi-family dwelling and paid to construct a fire escape at the building's rear. The fire escape, then and now, ran from the Premises's roof down to a shared metal landing connecting its second-floor balcony with the second-floor balcony of the neighboring property at 2707 N. Calvert Street. The fire escape, which Gebhardt constructed with the agreement of the then-owner of 2707 N. Calvert Street, is physically attached to both buildings. As originally constructed, the fire escape included a narrow

---

[1] William Gebhardt owned W.F. Gebhardt & Co., Inc. until his death in 2017. Lawrence Gebhardt and Nancy Dowling, William Gebhardt's children, now serve as the co-personal representatives of Mr. Gebhardt's estate and operate the company in that capacity.

ladder that descended from the second-floor landing directly into the backyard of 2707 N. Calvert Street, "within a foot or two" of the Premises.

Sometime in the late-summer or fall of 2017, Gebhardt discovered that the ladder was missing.[2] Gebhardt did not initially know who had removed the ladder or when it had been removed. In April 2018, Gebhardt sued both the current owner of 2707 N. Calvert Street—an LLC controlled by Emery Ayers Greenidge, who lived there along with her husband (collectively, the "Greenidges")—and the previous owners (until April 2016)— Damon Burton and Jessica Jones-Smith ("Burton/Jones-Smith"). Gebhardt sought to establish easement rights from the Greenidges to rebuild the ladder and to recover the cost of rebuilding the ladder from the culpable party. In late 2018, Gebhardt learned through discovery that Burton/Jones-Smith had removed the ladder in February 2016, before transferring the property to the Greenidges. Because the Greenidges neither recognized Gebhardt's easement claim nor permitted Gebhardt to rebuild the ladder into their yard, Gebhardt continued the suit against both parties.

### *The Building Code Violation*

On December 10, 2018, the City issued a violation notice and suspended Gebhardt's multi-family occupancy permit for the Premises due to "[i]nadequate means of egress" as a result of the lack of a fully operational fire escape. The notice informed Gebhardt that it would be liable for fines of up to $500 daily unless it corrected the infraction within 30

---

[2] Until relatively recently, both properties were operated as multi-family dwellings that were required to have a fire escape by the City of Baltimore ("City") building code. At some point before the ladder was destroyed, the owners of 2707 N. Calvert Street apparently decided to revert use of that property to a single-family dwelling.

days. Gebhardt sought administrative review and asked the City to rescind the violation notice because Gebhardt was engaged in litigation for the purpose of obtaining an easement to resolve the matter. Gebhardt also informed the City that the Premises did not at the time have tenants and would not be re-occupied until Gebhardt remedied the violation.

In its letter requesting administrative review, Gebhardt explained its quandary:

> To install the fire escape so it is solely on [the Premises] would cost in the area of $70,000, according to one estimate. Installing the lower portion of the fire escape on 2707 N. Calvert Street will cost approximately $16,000 according to the same estimate. The current owners of 2707 N. Calvert Street will not permit the fire escape to be reconstructed and discharge into the yard of 2707 N. Calvert Street without a court order.

The problem was that the original fire escape was built with 24-inch wide ladders from both the roof to the second-floor landing and from the second-floor landing to the ground. Although those ladders were compliant with the 1966 City building code, the current code required 36-inch wide ladders. Gebhardt believed that grandfather provisions of the building code would permit it to rebuild a 24-inch ladder descending into the yard of 2707 N. Calvert Street, without any further changes, but that those provisions might not have permitted it to install a ladder descending onto the Premises without also widening and reconfiguring the rest of the fire escape at significantly greater cost.

At some point during the administrative review, the City agreed to permit Gebhardt to install a new, 36-inch wide set of steps descending from the second-floor landing onto the Premises without reconfiguring the remainder of the fire escape. Gebhardt did so, at a cost of $23,570, and the City eventually abated the violation notice and reissued the multi-family dwelling license. The City never charged Gebhardt any of the threatened fines.

3

### *Resolution of Litigation with the Neighbors*

On September 5, 2019, after regaining its occupancy permit, Gebhardt reached a settlement with Burton/Jones-Smith, whose insurance carrier paid $30,000 to resolve the claim. Of that amount, Gebhardt allocated $23,570 to cover the cost of adding the new steps, $1,563.11 to cover its attorneys' fees in defending the City's violation notice, and $4,866.89 toward the cost of its suit against Burton/Jones-Smith and the Greenidges. Gebhardt then dismissed its easement claim against the Greenidges.

Gebhardt asserts that it incurred attorneys' fees in connection with its lawsuit against the Greenidges and Burton/Jones-Smith, over and above the $4,866.89 it allocated from the settlement, of $114,628.83.

### *The Policy*

AEI insured Gebhardt for the policy period March 5, 2015 through March 5, 2016 pursuant to Commercial Package Policy CPP 1900299 10 (the "Policy").[3] The Policy provided commercial property insurance for the Premises with limits of $294,000 for building coverage, $30,000 for business income coverage, and $324,000 for equipment breakdown coverage.

This dispute centers on the Policy's Building and Personal Property Coverage, pursuant to which AEI undertook an obligation to "pay for direct physical loss of or damage to Covered Property at the [Premises] caused by or resulting from any Covered Cause of

---

[3] In addition to the commercial property coverage, the Policy also included general liability insurance. That coverage is not at issue in this appeal, so we will not consider it.

Loss."[4]  The coverage form defines Covered Property by reference to three different "type[s] of property":  (1) Building; (2) Your Business Personal Property; and (3) Personal Property Of Others.  Only the first two are at issue in this appeal.[5]

The Policy defines the Building type of coverage as follows:

> **a. Building**, meaning the building or structure described in the Declarations, including:
>
> (1) Completed additions;
>
> (2) Fixtures, including outdoor fixtures;
>
> (3) Permanently installed:
>
>> (a) Machinery and
>>
>> (b) Equipment;
>
> (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:
>
>> (a) Fire-extinguishing equipment;
>>
>> (b) Outdoor furniture;
>>
>> (c) Floor coverings; and
>>
>> (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

---

[4] The version of the Policy included in the record extract omits the page that identifies the premises that are covered.  A version of the Policy included in the record includes that page, which identifies the Premises as one of two covered premises.

[5] The Policy states that it applies to each "type of property . . . if a Limit of Insurance is shown in the Declarations for that type of property."  The declarations page lists a limit of liability for Building coverage but not for Your Business Personal Property coverage.  Nonetheless, the parties appear to agree that the Policy provides Your Business Personal Property coverage and neither raised or addressed the absence of a limit of liability for that coverage in the circuit court or on appeal.  As a result, we will not consider that issue further.

5

(5) If not covered by other insurance:

    (a) Additions under construction, alterations and repairs to the building or structure;

    (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

The Policy defines the Business Personal Property type of coverage as follows:

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following . . . :

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    (a) Made a part of the building or structure you occupy but do not own; and

    (b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

### *Gebhardt's Insurance Claim*

Gebhardt submitted an insurance claim to AEI for the destruction of the ladder on November 5, 2018, which was shortly after Gebhardt learned when the ladder had been destroyed, but more than a year after Gebhardt had discovered that the ladder was missing,

6

and approximately seven months after it brought suit against the Greenidges and Burton/Jones-Smith.[6] In its claim, Gebhardt described the fire escape and its shared, second-floor landing; informed AEI of the fire escape's history and damage; and provided information about its litigation against Burton/Jones-Smith and the Greenidges. Gebhardt asked AEI to provide coverage for

> (a) the costs of reconstructing the lower portion of the fire escape in the yard of 2707 Calvert N. [sic] Street and obtaining a declaratory judgment and injunction permitting the construction, including attorney's fees and litigation expenses, or (b) the cost of constructing a new fire escape solely on 2709 N. Calvert Street if possible, or (c) the diminution in the fair market value of 2707 Calvert N. [sic] Street if it must revert to single family use due to a lack of a serviceable fire escape and must be sold as a single family residence configured as a multi-family four unit apartment building.

On November 26, 2018, AEI denied coverage. AEI based its coverage decision on two Policy exclusions. First, AEI cited an exclusion "for loss or damage caused by or resulting from . . . loss of use or loss of market," which it contended precluded Gebhardt's alternative request for diminution in the Premises's market value if Gebhardt were not able to repair the fire escape. Second, AEI cited an exclusion for "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." AEI asserted that this exclusion precluded any coverage for Gebhardt's loss, which it concluded was due to the acts and decisions of Burton/Jones-Smith. On that basis, subject to a general

---

[6] On appeal, Gebhardt explains that it did not submit a coverage claim earlier because it was unsure when the ladder was destroyed and, therefore, which of three different insurers' policies was implicated.

reservation of rights, AEI disclaimed any "duty to defend or indemnify; or to take action; or perform acts or services," and it declined coverage.[7]

### *Procedural History*

In January 2019, Gebhardt sued AEI in the Circuit Court for Baltimore City for breach of contract. Gebhardt alleged that AEI had breached its obligations under the Policy by declining coverage for the destruction of the ladder. By the time of trial in October 2019, Gebhardt had settled its claim with Burton/Jones-Smith, dismissed its claim against the Greenidges, built a new ladder descending exclusively onto the Premises, and obtained a new permit from the City. As a result, the focus of Gebhardt's damages claim was its $114,628.83 in unreimbursed attorneys' fees and costs incurred in the litigation against the neighbors, which Gebhardt contended it had incurred due to AEI's wrongful denial of coverage. Of that amount, $59,050.50 had been incurred before Gebhardt had placed AEI on notice of its claim and $55,578.33 was incurred after that date.

A primary focus at trial was on whether the destroyed ladder was "at" the Premises. The Policy obligated AEI to provide coverage "for direct physical loss of or damage to Covered Property at the premises[.]" Gebhardt argued that "at" could mean both "on" and "near," and because the ladder was part of a shared fire escape attached to the Premises and descending just feet away from the Premises, it was "at" the Premises for purposes of the Policy's Building coverage. In the alternative, Gebhardt contended that even if "at" were interpreted to be synonymous with "on," the ladder was "on" the Premises because

---

[7] AEI did not identify late notice as a basis for its denial of coverage.

8

Gebhardt had a prescriptive easement to use the premises of 2707 N. Calvert Street for purposes of the fire escape. Finally, Gebhardt argued that even if not covered under the Building coverage, the ladder was nonetheless covered as Your Business Personal Property because it was owned by Gebhardt and "within 100 feet of the described premises[.]"

AEI responded that the Policy did not cover the ladder at all. With respect to the Building coverage, AEI argued that "at" was ambiguous and should be interpreted to mean "on" because it would be unreasonable to interpret it to mean "near" in the context of the Policy. In response to Gebhardt's alternative argument that it held a prescriptive easement, AEI argued that Gebhardt's use of the neighboring property had always been by consent and it had never recorded an easement. With respect to the Your Business Personal Property coverage, AEI argued that the fire escape was a fixture that was attached to 2707 N. Calvert Street, rather than the Premises, and it was therefore not Gebhardt's personal property. AEI also asserted that coverage was barred by the "acts or decisions" of others exclusion, on which it had relied in its initial coverage denial, although that exclusion was mentioned only briefly at trial.

After a bench trial, the circuit court ruled that AEI did not owe coverage because the ladder was not "at" the Premises. In its written opinion, the circuit court identified the dispositive issue as "the meaning of the preposition 'at' as it was employed in the [Policy.]" The court looked to dictionaries to assess whether "at" was ambiguous, stating:

> According to the Merriam Webster Dictionary, "at" is used as a function word to indicate presence or occurrence in, on, or *near*. (emphasis added). Black's Law Dictionary (4th Ed.) describes "at" as "a term of considerable elasticity of meaning . . . *at* may often express

simply nearness and proximity . . ." On that basis, this Court concludes that the meaning of "at" is indeed ambiguous.

To resolve that purported ambiguity, the court relied on "common sense." Observing that an "insurer has to know the parameters of its duties under the policy," the court concluded that interpreting "at" to include concepts of "nearness and proximity" would render application of the Policy

> problematic to the point that it is non-sensical. Where does the zone considered "near" [the Premises] end under this contract? A foot off the premises? A meter? The adjacent zip code? Simply put, the definition urged by Gebhardt is simply too amorphous and indefinite, and cannot possibly be what was contemplated by the parties when they entered into the instant insurance contract.

In a footnote, the court disposed of Gebhardt's alternative argument that it had a prescriptive easement, stating that the absence of a recorded easement meant that AEI was never put "on notice of its potential liability for coverage on that ladder." The court did not specifically address Gebhardt's alternative claim to coverage under the Policy's Your Business Personal Property coverage. After the court entered judgment in AEI's favor, Gebhardt noted this timely appeal.

## DISCUSSION

The basic facts underlying Gebhardt's coverage claim are not in dispute. AEI does not contest that Gebhardt built and paid for the entire fire escape, including the ladder. It is also undisputed that the fire escape, of which the ladder was an integral part, was physically attached to the outside of the Premises, as well as to 2707 N. Calvert Street, and that it was a fixture. The issue before this Court is whether the circuit court correctly interpreted the Policy in determining that the ladder was not "at the premises" when it was

10

destroyed. We conclude that the circuit court erred in adopting an overly restrictive interpretation of "at" as synonymous with "on." Based on the unambiguous terms of the Policy, we hold that the fire escape ladder was "at the premises" and, therefore, AEI owed coverage unless precluded by an applicable exclusion. We will therefore reverse the court's ruling and remand for further proceedings in line with our decision, including adjudication of any remaining coverage issues and, if appropriate, damages. Whether the court reopens the factual record is within its discretion.

"We construe an insurance policy according to contract principles." *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 694 (2015). "To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388 (1985). Generally, Maryland courts subscribe to the objective theory of contract interpretation. *See Myers v. Kayhoe*, 391 Md. 188, 198 (2006). Under this approach, if the language of the contract is unambiguous, we interpret the contract "based on what a reasonable person in the position of the parties would have understood the language to mean and not 'the subjective intent of the parties at the time of formation.'" *Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 393 (2019) (quoting *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 86 (2010)). "Thus, 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract.'" *Maryland Cas. Co.*, 442 Md. at 695 (quoting *Long v. State*, 371 Md. 72, 84 (2002)). Only "[w]here a court determines contractual language to be ambiguous, [do] the narrow bounds of the objective approach

11

give way, and the court is entitled to consider extrinsic or parol evidence to ascertain the parties' intentions." *Credible Behav. Health*, 466 Md. at 394.

"[T]he interpretation of a contract, including the question of whether the language of a contract is ambiguous, is a question of law subject to *de novo* review." *Id.* at 392 (quoting *Myers*, 391 Md. at 198); *Montgomery County v. Lake*, 68 Md. App. 269, 273 (1986) ("Where the facts are proved without contradiction and there exists no dispute as to any material inference of fact, a reviewing court may decide the issue as one of law.").

## I. THE POLICY'S BUILDING COVERAGE APPLIED TO THE FIRE ESCAPE BECAUSE THE FIRE ESCAPE WAS "AT THE PREMISES" WHEN THE LADDER WAS DESTROYED.

The Policy requires AEI to "pay for direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." AEI argues that the circuit court was correct in determining that the meaning of "at," in the phrase "at the premises," is ambiguous because it could mean "in," "on," or "near"; and that the court properly resolved that ambiguity in favor of excluding the meaning of "near" because such a meaning would provide insufficient guidance for AEI to determine its coverage obligations. Gebhardt contends that "at" is unambiguous and that it applies to a ladder that is part of a fire escape that is physically attached to the building, even if the ladder ultimately descends onto the neighboring property. Gebhardt further argues that even if the term is ambiguous, extrinsic evidence favors its interpretation. We conclude that the phrase "at the premises," as used in the Policy and as applied to these facts, is not ambiguous, and that the fire escape ladder was "at the premises[.]"

12

"A policy term is considered 'ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning.'" *Connors v. Gov't Employees Ins.*, 442 Md. 466, 481 (2015) (quoting *Cole v. State Farm Mut. Ins.*, 359 Md. 298, 305-06 (2000)). Merely because "a term cannot be precisely defined so as to make clear its application in all varying factual situations does not mean that it is ambiguous." *Allstate Ins. v. Humphrey*, 246 Md. 492, 496 (1967). Furthermore, "simply because [a party] can point to several slightly different dictionary definitions of [a word] does not render that term ambiguous." *Rigby v. Allstate Indem.*, 225 Md. App. 98, 110 (2015). Instead, each of those meanings must be reasonable in context. "Ascertaining the parties' intentions requires us to consider the plain language of the disputed contractual provisions 'in context, which includes not only the text of the entire contract but also the contract's character, purpose, and the facts and circumstances of the parties at the time of execution.'" *Credible Behav. Health*, 466 Md. at 394 (some internal quotation marks omitted) (quoting *Ocean Petroleum*, 416 Md. at 88).

"When the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *Maryland Cas. Co.*, 442 Md. at 695 (quoting *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 167 (2003)). "Traditionally, to supply contractual language with its 'ordinary and accepted meanings[,]' this Court consults the dictionary definition of such terms." *Credible Behav. Health*, 466 Md. at 394-95 (alteration in original) (quoting *Pac. Indem.*, 302 Md. at 388). AEI characterizes dictionary definitions as "extrinsic evidence," relying on *Cole v. State Farm Mutual Insurance Company*, 359 Md. 298, 305-

13

06 (2000), and *Information System & Network Corporation v. Federal Insurance*, 145 Md. App. 457, 465 (2002). In doing so, AEI misapprehends the role dictionary definitions play in statutory interpretation. In applying the objective theory of contract interpretation, we look to dictionary definitions to identify the common and popular understanding of the words used in the contract as evidence of what a reasonable person in the position of the parties would have understood those terms to mean. *Credible Behav. Health*, 466 Md. at 393-95. Such definitions are thus useful in determining whether the language of a contract is unambiguous. Extrinsic evidence, by contrast, is evidence that reflects on the parties' subjective intent in entering the contract, which is appropriately considered only for the purpose of resolving an ambiguity in the contract. *Id.* at 394 ("Where a court determines contractual language to be ambiguous, the narrow bounds of the objective approach give way, and the court is entitled to consider extrinsic or parol evidence to ascertain the parties' intentions.").

Neither *Cole* nor *Information System & Network Corporation* is to the contrary. In both cases, the courts referred to dictionaries as "extrinsic sources," not as extrinsic evidence. *See Cole*, 359 Md. at 305; *Info. Sys. & Network Corp.*, 145 Md. App. at 465. And the courts did not use dictionary definitions as extrinsic evidence to resolve ambiguities in contractual language in either case. *See Cole*, 359 Md. at 317-18 (finding ambiguity based on one party having varied its treatment of identical policy language in prior legal actions and deciding case without extrinsic evidence by resolving ambiguity against the insurer); *Info. Sys. & Network Corp.*, 145 Md. App. at 467 (noting no ambiguity in the policy's terms).

14

The Merriam-Webster Collegiate Dictionary provides as its first definition of "at": "used as a function word to indicate presence or occurrence in, on, or near[.]" *At*, *Merriam-Webster Collegiate Dictionary* 77 (11th ed. 2014). The same dictionary defines "in," when referring to location, as "used as a function word to indicate inclusion, location, or position within limits," *id.* at 627, and "on," when used in the same context, as "used as a function word to indicate position in contact with and supported by the top surface of," or "in close proximity with," or "the location of something," *id.* at 865. "[N]ear" is defined as "at, within, or to a short distance[.]" *Id.* at 828. The word "at" thus encompasses several concepts, including an object that is within certain, specified boundaries ("in"), located upon a particular surface ("on"), or located within a short distance of something ("near"). That definition supports Gebhardt's interpretation of the Policy as applying not only to outdoor fixtures that are in or on a covered premises, but also to fixtures that are in close proximity to it.

The other definition on which the circuit court relied is from the fourth edition of Black's Law Dictionary, which defined "at" as "[a] term of considerable elasticity of meaning, and somewhat indefinite." With respect to location, the definition provided that the word "means 'near' or 'near to,' and involves the idea of proximity." *At*, Black's Law Dictionary 159 (4th ed. 1968). That definition is entirely consistent with the definition we have cited from *Merriam-Webster* and supports our conclusion concerning the meaning of the word. However, the current, 11th edition of Black's Law Dictionary does not include a definition of "at," so we place greater reliance on the more up-to-date definition in the text. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal

15

Texts, Appendix A, A Note on the Use of Dictionaries, at 419, 423 (2012) (identifying the up-to-date version of Merriam-Webster's Collegiate Dictionary as one of the contemporaneous-usage dictionaries that are "the most useful and authoritative for the English language generally and for law").[8]

After reviewing those two dictionary definitions, the circuit court apparently concluded that the definition of "at," by including the concepts "in," "on," and "near," was ambiguous because it was unclear which of those concepts might apply. We think that is a misreading of the definition, which incorporates all of those concepts. That the word is broad enough to encompass multiple concepts is a feature of its meaning, not an inherent ambiguity. *See Fister ex rel. Estate of Fister v. Allstate Life Ins.*, 366 Md. 201, 217-18 (2001) ("[A] court may not create ambiguity or uncertainty where none otherwise exists."); *see also Montgomery County v. Cochran*, 471 Md. 186, 209 (2020) (stating that same principle applies to statutory interpretation).

We turn next to a consideration of the context provided by other provisions of the Policy. The Policy's Building coverage expressly applies to "[f]ixtures, including outdoor fixtures[.]" It does not limit covered outdoor fixtures to ones that hang only over the property constituting the premises. With respect to fire escapes, in particular, we would

---

[8] Other dictionaries included on the list of those "most useful and authoritative for the English language generally" from 2001 through the present include up-to-date editions of The Oxford English Dictionary, American Heritage Dictionary of the English Language, The New Oxford American Dictionary, The New Shorter Oxford English Dictionary, Webster's New World College Dictionary, The Cambridge Guide to English Usage, and Garner's Modern American Usage. *See* Scalia & Garner, *supra,* at 422-23.

16

expect that if there were an intent to exclude coverage of outdoor fixtures protruding over, for example, an adjoining alley or neighboring property, the Policy would specify that.[9]

The general grant of coverage for "Covered Property at the premises" applies not just to the Policy's Building coverage, but also to its Your Business Personal Property coverage. To that extent, it is notable that the latter coverage expressly extends to personal property "located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises[.]" Although not part of the Building Coverage, that provision suggests that the scope of property included under the umbrella of "at the premises" is not strictly limited to property that is on the premises. Moreover, that coverage provision makes use of the more restrictive terms "in," "on," and "within . . . of," reflecting an understanding of the difference in meaning of the terms. We must presume that the contrasting use of the broader term "at" in the general coverage grant was intentional, which counsels against interpreting that term as synonymous with "on."

AEI contends that the Policy's express application to personal property located within 100 feet of the Premises in the Your Business Personal Property coverage section, with no similar provision applied to fixtures in the Building coverage section, favors its interpretation that the Building coverage is limited to fixtures that are "on" the Premises. That interpretation ignores the structure of the coverage grant. The general grant of

---

[9] The Building coverage also expressly applies to "[m]aterials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure." The Policy does not limit its coverage to such property only if it is "on" the premises.

17

coverage applies to "Covered Property at the [Premises]." The Policy then defines the three particular "type[s] of property" to which that general grant applies. That the Policy includes additional limitations or specificity in identifying the scope of one type of covered property and not another cannot reasonably be read to restrict the general grant of coverage that applies to all three. That is particularly so because AEI's proposed interpretation would require us to narrow the general coverage grant by replacing the word "at" with the narrower word "on," in spite of the Policy's separate and presumably purposeful use of that distinct term in other places.

We also consider the broader context provided by the purpose of the Policy. In disputes over the meaning of a contract, context is essential. *See Credible Behav. Health*, 466 Md. at 394. The question is not whether a word could be ambiguous in a different context, but whether there is ambiguity in the context in which it is being used. *See Labor Ready, Inc. v. Abis*, 137 Md. App. 116, 128 (2001) ("If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent." (quoting *Martinez v. Miller Indus.*, 974 P.2d 1261, 1266 (Wash. Ct. App. 1999))). As this Court has explained:

> Language can be regarded as ambiguous in two different respects: (1) it may be intrinsically unclear, in the sense that a person reading it without the benefit of some extrinsic knowledge simply cannot determine what it means; or (2) its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain. That a term may be free from ambiguity when used in one context but of doubtful application in another context is well settled.

*Bernhardt v. Hartford Fire Ins.*, 102 Md. App. 45, 54-55 (1994) (internal citation and quotation marks omitted) (quoting *Town & Country v. Comcast Cablevision*, 70 Md. App.

18

272, 280 (1987)); *see also Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 311 (2004) (stating that a contract "must be read as a whole, each of its provisions being interpreted together with its other provisions" (quoting *Westinghouse Air Brake Div. v. United Elec., Radio and Mach. Workers of Am. Local 610*, 440 A.2d 529, 533 (Pa. Super. 1982))).

Here, the context is Building coverage that expressly applies to "outdoor fixtures" of a commercial property that is used for multi-family rental housing in an urban setting. In that context, we struggle to conceive of a reasonable interpretation of "at the premises" that would not apply to a fire escape that: (1) is owned by the insured; (2) is physically attached to the roof and second floor of the premises; (3) has a final ladder that descends to the ground within feet of the premises; and (4) is necessary to the operation of the premises as multi-family residential housing. To that end, the circuit court's concern that interpreting "at" to include the concept of "near" would render its application uncertain in some circumstances is simply not relevant to the interpretation of the term here. Although it is perhaps true that "near," in some other context, could include an "adjacent zip code," this is not such a context.

In sum, we conclude that, in context, the phrase "at the premises" unambiguously applies to the Premises's fire escape, including its final ladder, which descended "within a foot or two" of the Premises. As a result, we need not refer to extrinsic evidence to determine its meaning. *See Vito v. Grueff*, 453 Md. 88, 121 (2017) ("[T]he clear and unambiguous language of an agreement will not give away to what the parties thought that

19

the agreement meant or intended it to mean." (quoting *Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 8 (2014))).

Even if we were to conclude that the phrase "at the premises" were ambiguous in this context and so consider extrinsic evidence, however, it would not alter our conclusion. Extrinsic evidence is "[e]vidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement." *Extrinsic Evidence*, Black's Law Dictionary 700 (11th ed. 2019). Neither party presented any evidence concerning the negotiation or drafting of the policy language, likely because the Policy's language was supplied by AEI on a standard industry form (specifically, an ISO Properties, Inc. form with a 2007 copyright date). The only extrinsic evidence that AEI contends was introduced consists of the dictionary definitions that were considered by the circuit court. As we discussed above, those definitions do not constitute extrinsic evidence of the parties' intent. Most of the extrinsic evidence that Gebhardt contends it introduced is in the nature of context. Gebhardt points to evidence "that the fire-escape ladder was visible and in use for over 50 years," that it was essential to the lawful use of the Premises as a multi-family apartment building, and that it was physically attached to the Premises. We agree that this evidence provides context that suggests that a reasonable person reading the Policy and being aware of those facts would conclude that the fire escape would be covered. It is less clear that those facts constitute evidence of the parties' subjective intent at the time of contract formation. Gebhardt also contends that AEI's denial letter constitutes extrinsic evidence of the parties' intent because AEI did not initially decline coverage on the ground that the

20

fire escape ladder was not "'at' the premises." We fail to see how that post-claim communication reflects on the parties' intent when entering the insurance agreement.

Most importantly, in the absence of any extrinsic evidence weighing in favor of AEI's interpretation of the Policy—and none has been identified—Gebhardt's reasonable interpretation would prevail. Maryland does not follow the rule embraced by many other states that an insurance contract is always interpreted in favor of the insured. *See Harleysville Preferred Ins. v. Rams Head Savage Mill, LLC*, 237 Md. App. 705, 722 (2018). However, when a contract contains an ambiguity that is not resolved by extrinsic or parol evidence, "Maryland courts [will] construe a policy against an insurer" as the drafter of the policy. *Connors*, 442 Md. at 481-83 (quoting *Empire Fire & Marine Ins. v. Liberty Mut. Ins.*, 117 Md. App. 72, 98 n.10 (1997)); *see also O'Quinn v. Maryland Auto. Ins. Fund*, 157 Md. App. 214, 219 (2004) ("Although Maryland law does not construe insurance policies as a matter of course against the insurer, when a term in an insurance policy is found to be ambiguous, the court will construe that term against the drafter of the contract which is usually the insurer." (quoting *Mamsi Life & Health Ins. v. Callaway*, 375 Md. 261, 279-80 (2003))). Thus, if we were to conclude that the phrase "at the premises" were ambiguous because it could reasonably be interpreted to include or exclude the fire escape ladder, we would interpret the Policy against AEI.

**II.    IN THE ALTERNATIVE, IF THE FIRE ESCAPE WERE NOT COVERED BY THE POLICY'S BUILDING COVERAGE, THE POLICY'S YOUR BUSINESS PERSONAL PROPERTY COVERAGE WOULD COVER IT.**

If AEI were correct that the fire escape was not covered by the Policy's Building coverage because it was not a covered "outdoor fixture" of the building, it would have been

21

covered under the Policy's Your Business Personal Property coverage. That coverage expressly applies to personal property "located in or on the building described . . . or in the open . . . within 100 feet of the described premises," and it expressly includes "fixtures." It is undisputed that the entire fire escape was located within 100 feet of the Premises and was a fixture.

AEI contends that because the fire escape ladder was a fixture, it was real property as a matter of law, and so cannot properly be considered personal property for purposes of the Your Business Personal Property coverage. That argument both ignores the express terms of the Policy, which identifies "fixtures" as part of the Your Business Personal Property coverage, and misreads the law. In interpreting the provisions of the Policy, our concern is "what a reasonable person in the position of the parties would have understood the language to mean," *Credible Behav. Health*, 466 Md. at 393, not whether the parties' use of terminology was technically correct. Even if the parties were incorrect in identifying fixtures as personal property, a reasonable person reading a policy provision that expressly provides coverage for fixtures as personal property would understand that they are covered under that provision.

In arguing to the contrary, AEI relies on this Court's decision in *Nationwide Mutual Insurance v. Regency Furniture Inc.*, 183 Md. App. 710 (2009). Specifically, AEI contends that *Regency Furniture* stands for the proposition that business personal property coverage can never apply to fixtures, which instead are covered as real property, if they are covered at all. To the contrary, although the Court in *Regency Furniture* determined that fixtures were ordinarily real property that would not be covered under a policy's personal property

22

coverage, *id.* at 730, it observed that, in the policy at issue in that case, "some specifically identified items that might be categorized as real property [we]re listed, expressly, as being included in the 'Business Personal Property' section," *id.* That included "fixtures," which were identified as a type of "[t]enant's improvements and betterments" included in the policy's personal property coverage. *Id.* at 725-26. The Court assumed that fixtures would be covered under that policy provision. The problem for the insured in that case, however, was that it was seeking coverage under a different portion of the policy—that applicable to "[p]roperty of others . . . that is in [the insured's] care, custody or control"—which did not specifically list fixtures as covered. *Id.* at 728. Here, the Policy specifically lists fixtures as included within the Your Business Personal Property coverage. *Regency Furniture* thus offers AEI no assistance.

Finally, to the extent that AEI argues that it is unreasonable to interpret the Policy as covering fixtures under both the Building and Your Business Personal Property coverages, we disagree, because the plain, unambiguous language of the Policy does precisely that. One category of property listed under the Building coverage is "[f]ixtures, including outdoor fixtures," and one category of property listed under the Your Business Personal Property type of property is "[f]urniture and fixtures[.]" The Policy does not caveat or restrict either reference. If AEI did not mean to cover fixtures under both types of coverage, it should not have identified them as covered in both provisions.

In sum, even if AEI were correct that the fire escape ladder was not covered under the Policy's Building coverage because it was not "at the premises" for purposes of that type of property, it would nonetheless be covered under the Policy's Your Business

23

Personal Property coverage because it was a fixture owned by Gebhardt that was located within 100 feet of the Premises.

III. **THE CIRCUIT COURT'S CONSIDERATION OF OTHER EXCLUSIONS AND ATTORNEYS' FEES ON REMAND.**

Because the circuit court erred in entering judgment in favor of AEI on the ground that the fire escape ladder was not "at the premises," we must reverse and remand for further proceedings. The trial court will first need to address whether there is any remaining dispute concerning the application of exclusion B.3.b. of the Policy relating to acts or decisions of others. The Policy provides coverage for losses "caused by or resulting from any Covered Cause of Loss." Although Covered Cause of Loss is not defined in the Building and Personal Property Coverage Form, the Policy contains a separate Causes of Loss – Special Form, which states that "[w]hen Special is shown in the Declarations"— which it is in the Policy—"Covered Causes of Loss means Risks Of Direct Physical Loss," subject to certain exclusions and limitations. The Causes of Loss – Special Form does not define Risks Of Direct Physical Loss, nor have we identified a definition of that term anywhere in the Policy. However, the form does provide a list of exclusions and limitations that appear to shape what constitutes Covered Causes of Loss.

The only exclusion or limitation on which AEI relied at trial is exclusion B.3.b. of the Causes of Loss – Special Form, which provides:

> We will not pay for loss or damage caused by or resulting from any of the following [occurrences] . . . . But if an excluded cause of loss that is listed . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
> . . . .

24

b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

Because the circuit court resolved coverage in favor of AEI on other grounds, it did not address the applicability of that exclusion and neither party addressed the issue in its briefs. In the absence of briefing and argument from the parties, we are not in a position to resolve whether exclusion B.3.b. is enforceable generally or whether it would apply in this case. As a result, the circuit court will need to determine in the first instance whether AEI has abandoned that argument and, if not, whether that exclusion applies and is enforceable.[10]

If the court determines that AEI has abandoned its reliance on exclusion B.3.b. or that that exclusion does not apply, the court will need to determine whether Gebhardt's attorneys' fees incurred in its litigation with Burton/Jones-Smith and the Greenidges qualify as damages available under the collateral litigation doctrine. As the parties acknowledged at oral argument, resolving that dispute will involve making certain factual determinations. We therefore leave those determinations for the circuit court to address on remand, if appropriate.

---

[10] If the court determines that AEI has not abandoned its reliance on exclusion B.3.b., the court will presumably need to address, among any other arguments that may arise:  (1) the exception to the exclusion providing that AEI is responsible for coverage "if an excluded cause of loss that is listed . . . results in a Covered Cause of Loss"; and (2) the provision included in the Commercial Property Conditions form stating, "[a]ny act or neglect of any person other than you beyond your direction or control will not affect this insurance."

25

## CONCLUSION

We will reverse the circuit court's judgment in favor of AEI and its determination that the fire escape ladder was not "at the premises[.]" We will remand for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0093s20cn.pdf